# In the United States Court of Federal Claims

No. 16-1489

Filed: August 2, 2017*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| VETERANS TECHNOLOGY, LLC, and MDW ASSOCIATES, LLC, | 5 U.S.C. § 706 (Administrative Procedure Act, Scope of Judicial Review); |
| | 15 U.S.C. §§ 632, 637 (Small Business Act); |
| Plaintiffs, | 28 U.S.C. § 1491(b)(1) (United States Court of Federal Claims Bid Protest Jurisdiction); |
| v. | 13 C.F.R. § 121.103(f) (Affiliation Rule), (h) (Joint Venture Rule); |
| THE UNITED STATES, | Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1) (Motion to Dismiss for Lack of Subject-Matter Jurisdiction); 52.1 (Motion for Judgment on the Administrative Record); 52.2 (Remand). |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Paul D. Clement**, Kirkland & Ellis LLP, Washington, D.C., Counsel for Plaintiffs.

**Richard P. Schroeder**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

## MEMORANDUM OPINION AND ORDER REMANDING A JULY 20, 2016 SMALL BUSINESS ADMINISTRATION'S OFFICE OF HEARINGS AND APPEALS SIZE DETERMINATION DECISION \*\*

**BRADEN**, *Chief Judge*.

On November 10, 2016, Veterans Technology, LLC ("Vet Tech") and MDW Associates, LLC ("MDW") filed a Complaint ("Compl.") in the United States Court of Federal Claims to protest a July 20, 2016 decision by the Small Business Administration's Office of Hearings and Appeals ("SBA OHA"), affirming a May 2, 2016 Small Business Administration's Area Office ("SBA Area Office") finding that Vet Tech and MDW were "other than small businesses for the size standard of $15 million." AR 2634.[1]

---

\* On July 31, 2017, the court forwarded a sealed copy of this Memorandum Opinion And Order to the parties to redact any confidential information from the public version. The parties had until August 2, 2017, to file any proposed redactions. Neither party filed any redactions.

\*\* The facts discussed herein were derived from the Administrative Record ("AR 1–2837").

[1] Based on NAICS Code 541611. AR 1773.

For the reasons discussed herein, the court has determined that the SBA OHA's July 20, 2016 decision was arbitrary and capricious. Therefore, that decision is vacated and remanded for further consideration consistent with this Memorandum Opinion.

## I.   RELEVANT FACTUAL BACKGROUND.

### A.   On April 27, 2015, MDW Associates, LLC And Defense Acquisition, Inc. Formed A Joint Venture: Veterans Technology, LLC.

On January 30, 2011, ECS Federal, LLC ("ECS"), a 1,000-employee firm providing "federal customers" with "technical and management services and solutions in support of their critical needs and mission objectives" acquired Paradigm Technologies, Inc. ("Paradigm"), a privately-held corporation with 250 employees with roughly $50 million in annual revenues. AR 727, 1777. Paradigm specialized in providing "integrated business and financial management [], acquisition management, and program management support to the Department of Defense ("DOD")." AR 727. "In order to integrate the Paradigm workforce and its contracts and subcontracts in an orderly manner, Paradigm became a wholly owned subsidiary of ECS during calendar year 2012, and all Paradigm contracts were subsequently novated to ECS." AR 728, 2417. The acquisition of Paradigm did not close until January 1, 2012. AR 1860. On or about December 31, 2011, ECS assumed responsibility for Prime Contract HQ0147-10-D that originally was awarded to Paradigm on August 9, 2010. AR 2533–34.

On February 10, 2012, Mr. Mark Maguire, Mr. William Walker, Ms. Stephanie Jordan, and Mr. Lee Dixson formed MDW, a new firm incorporated as a limited liability company under Virginia state law. AR 1855–56, 2415. At that time, Mr. Maguire and Mr. Dixson were employed by Paradigm. AR 2413. Shortly after ECS acquired Paradigm, Mr. Maguire and Mr. Dixson advised ECS they were leaving the company. AR 2413. At that time, Mr. Maguire and Mr. Dixson were working on a Missile Defense Agency Engineering And Support Services ("MiDAESS") Financial Management Task Order DOB-02-10, issued under Prime Contract HQ0147-10-D-0020. AR 2413, 2534. When ECS was informed about Mr. Maguire and Mr. Dixson's plans, ECS threatened to fire them. AR 2413. "The only reason ECS did not carry out the threat is that the government lead for the MiDAESS Financial Management Task Order informed ECS leaders that Mr. Maguire [was] deemed to have critical skills and knowledge essential to the Task Order execution, and could not be removed on such short notice. Instead, ECS decided to provide MDW a subcontract to continue the critical skills support required by the Agency." AR 2413–14.

On April 27, 2015, MDW formed a joint venture with Defense Acquisition, Inc. ("DAI") by acquiring 49% of Vet Tech, a limited liability corporation organized under Delaware law. [2] AR

---

[2] As a company, Vet Tech preexisted this agreement, but was under sole ownership of DAI. AR 724, 1869. The Administrative Record, however, reflects that Vet Tech entered into teaming agreements with: Camber Corporation, effective on April 22, 2015 (AR 2260–66); ECS on April 21, 2015 (AR 2270, 2275); Modern Technology Solutions, Inc. on April 21, 2015 (AR 2288–94); Tecolate Research, Inc. on April 21, 2015 (AR 2298); and CAS, Inc. on August 5, 2015 (AR 2309).

724, 1795, 1869.  The purpose of the joint venture was to pursue Missile Defense Agency ("Missile Defense") contracts, like the one MDW acquired from Paradigm.  AR 724, 1795–96.  DAI retained 51% of Vet Tech's stock and is the joint venture's "managing partner."  AR 724, 1773.

As the following figure depicts, MDW, DAI, and Vet Tech have no corporate relationship either with ECS or Paradigm:



**B.    On April 1, 2016, The Missile Defense Agency Awarded Small Business Set-Aside Contract No. HQ0147-16-C-0028 To Veteran Technology, LLC.**

On June 26, 2015, the Missile Defense issued Solicitation No. HQ0147-15-R-0019 (the "Solicitation") to seek offers to provide "support to the Ballistic Missile Defense System in the areas of strategic planning and financial management, cost estimating, and analysis, earned value management, accounting and financial systems support and integration."  AR 2623.  The

---

Consequently, the exact date Vet Tech was established as an LLC is not clear, but not relevant to the court's resolution in this case.  MDW was not involved in any of these teaming agreements.

Solicitation was set aside for a small business concern with an annual revenue of $15 million or less.[3]  AR 130.

On August 26, 2015, Vet Tech submitted a bid in response to the Solicitation.  AR 322–1685.  Middle Bay Solutions II, LLC ("Middle Bay") also submitted a bid.  AR 1686.

On April 1, 2016, Missile Defense awarded Vet Tech Contract No. HQ0147-16-C-0028 (the "Contract").  AR 1686–87.  Five days later, Middle Bay filed a "size protest" with a SBA Area Office challenging the small-business status of Vet Tech, because Vet Tech allegedly was affiliated with ECS, a "large business," under the "ostensible subcontractor rule."[4]  AR 2623.

### C.   On May 2, 2016, A Small Business Administration Area Office Found That Veterans Technology, LLC, Did Not Qualify As A Small Business Concern, Because It Was Affiliated With A Large Business.

On May 2, 2016, the SBA Area Office found, since Vet Tech was a joint venture,[5] it could only qualify for a "small business" set-aside contract, if all of its members were small businesses.  AR 2628.[6]  The SBA Area Office, however, found that MDW was "affiliated" with ECS, based

---

[3] Neither MDW, DAI, nor Vet Tech had annual revenues that exceeded $15 million.  AR 1774, 1840, 1857, 2535.

[4] The SBA's "ostensible subcontractor" rule provides:

[a] contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes.  An ostensible subcontractor is a subcontractor that . . . performs *primary and vital requirements of a contract*, or of an order, or is *a subcontractor upon which the prime contractor is unusually reliant.*

13 C.F.R. § 121.103(h)(4) (emphasis added).

[5] The SBA's "joint venture" rule provides:

[a] joint venture is an association of individuals and/or concerns with interests in any degree or proportion by way of contract, expressed or implied, consorting to engage in and carry out no more than three specific or limited-purpose business ventures for joint profit over a two year period, for which purpose they combine their efforts, property, money, skill, or knowledge, but not on a continuing or permanent basis for conducting business generally.  This means the joint venture entity cannot submit more than three offers over a two year period, starting from the date of the submission of the first offer.

13 C.F.R. § 121.103(h).

[6] The SBA Area Office also found that Mr. Maguire owned 38.6% of MDW stock; Mr. Walker, Vice President and Chief Operating Officer of MDW owned 30.07% of MDW stock; and Mr. Dixson, Vice President and Chief Financial Officer of MDW owned approximately 30.08% of MDW stock.  These individuals, as minority shareholders, however, were presumed by

on an "identity of interest due to economic dependency," because MDW received more than 70% of its revenue from ECS, *i.e.*, 100% in 2012; 90% in 2013 and 2014; and over 70% in 2015.[7]   AR 2628–30.

> Affiliation, based on "identity of interest," is defined in a SBA rule, as follows:

> Affiliation may arise among two or more persons with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as family members, individuals or firms with common investments, or *firms that are economically dependent through contractual or other relationships*) may be treated as one party with such interests aggregated.   Where SBA determines that such interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

13 C.F.R. § 121.103(f).

MDW was therefore found to be "other than small," because the "combined aggregate average receipts for MDW and ECS exceed[ed] the size standard." AR 2628. Because one of Vet Tech's members was "other than small," the SBA Area Office also found that Vet Tech exceeded the procurement's size standard. AR 2634.

On May 17, 2016, Vet Tech filed an appeal of the SBA Area Office's size determination with the SBA OHA. AR 2660.

> **D.     On July 20, 2016, The Small Business Administration's Office Of Hearings And Appeals Affirmed The Area Office's Size Determination.**

On July 20, 2016, the SBA OHA affirmed the SBA Area Office's size determination because, "as a matter of law, a firm that derives 70% or more of its revenue from another firm is economically dependent on that firm." AR 2803 (citing *Faison Office Products, LLC*, SBA No. SIZ-4834, 2007 WL 458217, at *8 (Jan. 26, 2007)).[8]   And, the SBA OHA rejected Vet Tech's argument that MDW fell under an exception to the 70% *Faison* threshold for a newly formed business, discussed in *Argus & Black, Inc.*, SBA No. SIZ-5204, 2011 WL 1168302 (Feb. 22, 2011) (ruling that economic dependence was not found where a startup company had secured only two

---

the SBA Area Office to exercise control over MDW.  AR 2627.  The record, however, does not contain any evidence that these three individuals ever exercised "collective control."

[7] The SBA Area Office's May 2, 2016 finding, however, did not agree that the "ostensible contractor" rule applied.

[8] The phrase "economically dependent through contractual or other relationships" is not defined in this SBA regulation, but is subsumed in the definition of "joint venture" and has been discussed in several SBA OHA decisions that follow *Faison's* view that, "if a firm derived 70% or more of its revenues from another firm [it] is economically dependent upon that firm." AR 2803.

contracts).  AR 2804.  Although the SBA OHA cited two other OHA decisions that declined to find "economic dependence,"[9] those decisions were distinguished on the basis that MDW was not a "startup business" in August 2015, when it submitted a bid on the Solicitation, and MDW's arrangement with ECS was not a single small contract of short duration, but instead involved the recipient of "multi-million dollar subcontracts spanning several years."  AR 2804.  Accordingly, the SBA OHA concluded that MDW was "affiliated" with ECS.  AR 2804.  Therefore, ECS's size was attributed to MDW, prohibiting Vet Tech from being awarded a "small business" set aside for the April 1, 2016 Missile Defense Contract.  AR 2805.  In addition, Vet Tech and MDW were advised they "cannot certify as a small business concern on future Government procurements."  AR 2634.

The SBA OHA, however, declined to address whether MDW was affiliated with ECS under the "newly organized concern" rule, because the finding of "economic dependence" was dispositive.  AR 2804.

**E.      On July 29, 2016, The Missile Defense Agency Terminated Contract No. HQ0147-16-C-0028 For Convenience Of The Government.**

On July 29, 2016, Missile Defense "completely terminated" the Contract with Vet Tech, pursuant to Federal Acquisition Regulation ("FAR") 52.249-6, because of the SBA OHA's July 20, 2016 ruling disqualifying Vet Tech as a small business.  AR 2807.  Thereafter, Missile Defense re-issued the Solicitation, but represented to the court that it would not make any contract award, until this bid protest was resolved.  11/17/16 Erskine Decl. ¶¶ 2–3, ECF No. 8.

**II.      PROCEDURAL HISTORY.**

On November 10, 2016, Vet Tech and MDW (hereinafter collectively "Plaintiffs") filed a Complaint in the United States Court of Federal Claims alleging that the SBA's size determination was "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law," because the SBA OHA misinterpreted 13 C.F.R. § 121.103(f) and failed to consider relevant evidence of MDW's independence from ECS.  Compl. at ¶¶ 44–45 (quoting 5 U.S.C § 706(2)(A)).

On December 9, 2017, the Government filed the Administrative Record.  ECF No. 13.  On December 21, 2016, Plaintiffs filed a Motion For Judgment On The Administrative Record ("Pl. Br.").  ECF Nos. 16–17.  On January 24, 2017, the Government requested an extension to file a response.  ECF No. 20.  On January 26, 2017, the court granted that motion.  ECF No. 21.  On February 2, 2017, the Government filed a request for a second extension.  ECF No. 22.  The next day, the court also granted that motion.  ECF No. 23.

---

[9] *See Size Appeal of Cherokee Nation Healthcare Services, Inc.*, SBA No. SIZ-5343, 2012 WL 3000376 (Apr. 16, 2012) (ruling that a small business was not economically dependent, despite relying on only two contracts with the same customer, because it was a startup operation); *see also Size Appeal of Olgoonik Solutions, LLC*, SBA No. SIZ-5669, 2015 WL 4972248 (July 10, 2015) (ruling that receipts of more than 70% from an affiliate was not sufficient to find economic dependence, where other financial support was available).

On February 9, 2017, the Government filed a Cross-Motion To Dismiss [the November 10, 2016 Complaint] In-Part And For Judgment On The Administrative Record, together with a Response To Plaintiffs' December 21, 2016 Motion For Judgment On The Administrative Record ("Gov't Br."). ECF No. 24.

On March 3, 2017, Plaintiffs filed a Response to the Government's February 9, 2017 Cross-Motion To Dismiss-In-Part And Reply to the Government's February 9, 2017 Cross-Motion For Judgment On The Administrative Record ("Pl. Reply"). ECF No. 25. On March 17, 2017, the Government filed a Reply In Support Of Its Cross-Motion To Dismiss And Judgment On The Administrative Record ("Gov't Reply"). ECF No. 28.

On June 26, 2017, the court convened an oral argument.

## III. DISCUSSION.

### A. Subject Matter Jurisdiction.

Subject matter jurisdiction is a threshold issue that a court must determine at the outset of a case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))).

Pursuant to the Administrative Dispute Resolution Act of 1995, the United States Court of Federal Claims has jurisdiction

> to render judgment on an action by an interested party objecting to a solicitation by a Federal agency or proposals for a proposed contract or to a proposed award of a contract or any alleged violation of statute or regulation *in connection with a procurement or a proposed procurement*. . . . [T]he United States Court of Federal Claims . . . shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C. § 1491(b)(1) (emphasis added).

The United States Court of Appeals for the Federal Circuit has held that "the operative phrase [in 28 U.S.C § 1491(b), *i.e.*,] 'in connection with' is very sweeping in scope." *RAMCOR Services Group, Inc. v. United States*, 185 F.3d 1286, 1289 (Fed. Cir. 1999). That phrase includes cases that arise in "connection with *any stage of the federal contracting acquisition process*." *Distributed Sols., Inc. v. United States*, 539 F.3d 1340, 1346 (Fed. Cir. 2008) (emphasis added).

Although the United States Court of Appeals for the Federal Circuit has not directly addressed whether the United States Court of Federal Claims has jurisdiction to review SBA OHA size appeals, our appellate court has held that some SBA OHA decisions are "in connection with a [] procurement" when they require an agency to alter its procurement choices. *See Palladian Partners, Inc. v. United States*, 783 F.3d 1243, 1254 (Fed. Cir. 2015) (holding that United States Court of Federal Claims has jurisdiction to review a SBA OHA decision that required the procuring agency to amend the solicitation at issue).

7

In this case, the November 10, 2016 Complaint alleges that the SBA OHA's July 20, 2016 decision that Vet Tech was affiliated with a large business was "arbitrary, capricious, [or] an abuse of discretion, or otherwise not in accordance with law." Compl. at ¶¶ 44–45. The November 10, 2016 Complaint also alleges that the SBA OHA's July 20, 2016 decision caused Missile Defense to terminate Vet Tech's contract under Solicitation No. HQ0147-15-R-0019. Compl. at ¶ 10; AR 2807.

For these reasons, the court has determined that it has subject matter jurisdiction, under 28 U.S.C. § 1491(b)(1), to adjudicate the November 10, 2016 Complaint's challenge to the SBA OHA's July 20, 2016 decision.

### B.    Standing.

"Standing is [also] a threshold jurisdictional issue." *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369–70 (Fed. Cir. 2002). "The party invoking federal jurisdiction bears the burden of establishing the[ ] elements [of standing]." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing under 28 U.S.C. § 1491(b)(1), a complaint must allege sufficient facts to show that the plaintiff: (1) is an interested party; and (2) was prejudiced by alleged errors in the procurement process. *See Myers*, 275 F.3d at 1370 (holding that standing under § 1491(b)(1) is limited to "interested parties"); *see also Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378–79 (Fed. Cir. 2009) ("[T]he question of prejudice goes directly to the question of standing[.]").

The United States Court of Appeals for the Federal Circuit has held that the term "interested party" in 28 U.S.C. § 1491(b)(1) "is construed in accordance with the Competition in Contracting Act[.]" *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006) (citing 31 U.S.C. §§ 3551–56). Therefore, to qualify as an interested party, "a protestor must show that: (1) it was an actual or prospective bidder or offeror[;] and (2) it had a direct economic interest in the procurement or proposed procurement." *Distributed Sols.*, 539 F.3d at 1344.

In this case, Vet Tech submitted a bid under Solicitation No. HQ0147-15-R-0019 (AR 322–1685) and was awarded Contract No. HQ0147-16-C-0028 (AR 1686). MDW, however, did not submit or intend to submit a bid. Pl. Reply at 3 n.1. Therefore, Vet Tech was "an actual or prospective bidder;" but MDW was not.

To establish a direct economic interest, a plaintiff must show "a non-trivial competitive injury which can be addressed by judicial relief." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009). For example, in *Systems Application & Technologies, Inc. v. United States*, 691 F.3d 1374 (Fed. Cir. 2012), the United States Court of Appeals for the Federal Circuit held that an awardee of a contract suffered a "non-trivial competitive injury," when the procuring agency deprived that awardee of a contract. *See id*. at 1382 ("This court determines that this protest asserts the necessary injury for standing. First, the [agency's] decision to engage in corrective action will arbitrarily require [plaintiff] to win the same award twice.").

In this case, Vet Tech incurred injury similar to the protestor in *Systems Application*, because the SBA OHA's July 20, 2016 ruling caused Missile Defense to cancel a contract that was awarded to Vet Tech. AR 2801. In addition, the SBA's determination prohibited Vet Tech from

competing for future government contracts that are classified as small business set asides.  AR 2634.  Therefore, the court has determined that Vet Tech is an "interested party" and has incurred a "non-trivial competitive injury" under 28 U.S.C. § 1491(b).  MDW, however, is not an "interested party," because it was not an actual or prospective bidder for Solicitation No. HQ 0147-15-0019.

To establish standing, the protestor also must demonstrate prejudice.  *See Myers*, 275 F.3d 1366, 1370 (Fed. Cir. 2002) ("[P]rejudice (or injury) is a necessary element of standing.").  "A party has been prejudiced when it can show that[,] but for the error, it would have had a substantial chance of securing the contract."  *Labatt*, 577 F.3d at 1378; *see also Bannum, Inc. v. United States*, 404 F.3d 1346, 1358 (Fed. Cir. 2005) ("To establish 'significant prejudice' [the protestor] must show that there was a 'substantial chance' it would have received the contract award[,] but for the [alleged] errors[.]").  "In other words, the protestor's chance of securing the award must not have been insubstantial."  *See Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

In this case, Missile Defense initially determined that Vet Tech's bid provided the "best value" for the Government and awarded Vet Tech a contract under the Solicitation.  AR 1686.  Missile Defense, however, was compelled to terminate Vet Tech's Contract and re-issue the Solicitation, because the SBA OHA determined that Vet Tech was not a "small business."  AR 2807.  As such, the November 10, 2016 Complaint challenges the SBA OHA's determination as "arbitrary, capricious, an abuse of discretion, [and] otherwise not in accordance with law[.]"  Compl. at ¶¶ 44–45.  Therefore, but for the SBA OHA's allegedly erroneous ruling that MDW was not a "small business," by virtue of being economically dependent on ECS, Vet Tech would have been able to perform the Contract, as the "best value" bidder.  Accordingly, if Vet Tech prevails in this bid protest, it has a "substantial chance" of re-securing the award at issue.

For these reasons, the court has determined that Vet Tech has standing to challenge the SBA OHA's July 20, 2016 ruling.

**C.    Whether The Small Business Administration's Determination That Veterans Technology, LLC Was Not A "Small Business" Was Contrary To Law, Not Rational, Or Arbitrary And Capricious.**

**1.    Standards Of Review.**

**a.    Bid Protests.**

Pursuant to the Tucker Act, as amended by the Administrative Dispute Resolution Act, Pub. L. No. 104-320 § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996), Congress authorized the United States Court of Federal Claims to review challenges to agency decisions, pursuant to the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."); *see also* 5 U.S.C. § 706(2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *Banknote Corp. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir.

2004) ("Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'") (citations omitted).

The United States Court of Appeals for the Federal Circuit has held that the court's primary responsibility is to determine whether a federal agency violated a federal statute or regulation in the procurement process and whether any such violation was prejudicial. *See Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (holding that "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations") (internal quotation marks and citations omitted); *see also Banknote Corp.*, 365 F.3d at 1351 (holding that, when challenging a government contract procurement due to a violation of law or procedure, "the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations") (citations omitted).  As part of this inquiry, the court must determine whether an agency's proposal evaluations were consistent with the evaluation scheme described in the relevant solicitation. *See* 48 C.F.R. § 15.305(a) ("An agency shall evaluate competitive proposals and then assess their relative qualities solely on the factors and subfactors specified in the solicitation.").

If a federal agency's action is challenged, because it was made without a rational basis, the trial court's focus is "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, so that the disappointed bidder bears a heavy burden of showing that the award decision had no rational basis." *Centech Group, Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009); *see also Savantage Fin. Servs. Inc. v. United States*, 595 F.3d 1282, 1287 (Fed. Cir. 2010) ("We must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors.") (internal alterations, quotations and citations omitted); *Weeks Marine, Inc.*, 575 F.3d at 1368–69 ("We have stated that procurement decisions invoke[] highly deferential rational basis review . . . [u]nder that standard, we sustain an agency action evincing rational reasoning and consideration of relevant factors.") (internal quotations and citations omitted).

When a court reviews whether a federal agency's decision is arbitrary and capricious, the court examines whether an agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  In these circumstances, the court may set aside or enjoin the agency, but "only in extremely limited circumstances." *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir. 1983).

**b.     Motions For Judgment On The Administrative Record.**

In this case, the parties filed Cross-Motions For Judgment On The Administrative Record, pursuant to RCFC 52.1.  The United States Court of Appeals for the Federal Circuit requires that the court treat a judgment on the administrative record as if it were an expedited trial on the record. *See Bannum*, 404 F.3d at 1356.  Therefore, the existence of material issues of fact does not prohibit the court from granting a RCFC 52.1 motion. *Id*. at 1354.  Instead, the court can base its determination on "factual findings from the record evidence." *Id*.

2.   **Veterans Technology, LLC's December 21, 2016 Motion For Judgment On The Administrative Record.**

Vet Tech argues that the SBA OHA's July 20, 2016 decision, affirming the SBA Area Office's May 2, 2016 finding that MDW was economically dependent on ECS, misapplied 13 C.F.R. § 121.103(f).  Pl. Br. at 9.  The presumption of economic dependence in 13 C.F.R. § 121.103(f) is not a *per se* rule.  Pl. Br. at 9–10.  In fact, the presumption may be rebutted "by a showing that despite the contractual relations with another concern, the concern at issue is not solely dependent on that other concern" (Pl. Br. at 9–10) or "where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts" (Pl. Br. at 12).

The SBA OHA's July 20, 2016 decision, however, applied the presumption of economic dependence as a bright line rule and recognized there could only be an exception where the facts are substantially the same as those in prior SBA cases.  Pl. Br. at 11–12.  But, as the Preamble to 13 C.F.R. § 121.103(f) emphasizes, "firms should be permitted to make any arguments and provide any evidence that they believe demonstrates that no affiliation should be found."  Pl. Br. at 14 (quoting Small Bus. Gov't Contracting & Nat'l Def. Authorization Act of 2013 Amendments, 81 FED. REG. 34243-01, 34252 (May 31, 2016)).  The Preamble also states that the SBA "does not want [the economic dependence presumption] to negatively impact *start-ups* or *any other company that operates in a unique industry*."  Pl. Br. at 14 (emphases added) (quoting 81 FED. REG. at 34252).

In this case, the SBA OHA's ruling improperly considered only whether MDW fit into predetermined exceptions and failed to consider such evidence as: (1) MDW, a four-year old business, was relatively new to the defense-contracting industry; (2) it takes eighteen to twenty-four months from issuance of a solicitation to award of a contract in the defense-contracting industry; (3) MDW has actively worked to diversify its business away from ECS; and (4) ECS did not exercise corporate control over MDW nor could the completion or cancellation of the subcontracts with ECS drive MDW out of business.  Pl. Br. at 14–17.

In addition, the SBA OHA's interpretation of 13 C.F.R. 121.103(f) conflicts with any sensible construction of the Small Business Act, that defines a "small business concern" as "one which is independently owned and operated and which is not dominant in its field of operation."  Pl. Br. at 17 (quoting 15 U.S.C. § 632(a)(1)).  Vet Tech recognizes it is consistent with the Small Business Act to ensure that small businesses are not controlled by large ones by applying a rebuttable presumption of economic dependence, where a small business derives over 70% of their revenue from a single large firm.  Pl. Br. at 17.  But, treating the 70% presumption as irrebuttable, conflicts with the Small Business Act, because "it takes a factor associated with small businesses (having relatively undiversified revenue sources) and turns it into a factor that disqualifies a business from being classified as small."  Pl. Br. at 17–18.

The SBA Area Office also erred in finding that MDW was affiliated with ECS under the "newly organized concern" rule that defines a "key employee" as one "who, because of his/her position in the concern, has a critical influence in or substantive control over the operations or management of the concern."  13 C.F.R. § 121.103(g).  It is true that Mr. Maguire held the title of "Vice President" at Paradigm, but his role was limited to working as a financial management expert

on a specific task order. Pl. Br. at 19. Therefore, "Mr. Maguire was not an officer, director, principal stockholder, managing member or key employee of Paradigm, nor did he have the ability to control Paradigm's overall direction or management." Pl. Br. at 19 (citing AR 2245, 2414–16). Three months after Paradigm was acquired by ECS, however, Mr. Maguire announced his intention to leave ECS and start a new company: MDW. Pl. Br. at 19. Shortly thereafter, ECS attempted to fire Mr. Maguire, but Missile Defense intervened to ensure that ECS continued to retain Mr. Maguire, until ECS could subcontract Paradigm's financial management work to another entity. Pl. Br. at 19. In addition, Mr. Maguire never was a "key employee" of ECS and the SBA's determination that MDW and ECS also were affiliated under the "newly organized concern rule" was arbitrary and capricious. Pl. Br. at 19–20.

### 3.    The Government's February 9, 2017 Response And Cross-Motion For Judgment On The Administrative Record.

The Government responds that the SBA Area Office did not apply 13 C.F.R. 121.103(f)'s economic dependence rule as a "hard and fast rule." Gov't Br. at 14. Instead, the SBA Area Office's May 2, 2016 size determination recognized that the presumption of economic dependence "may be rebutted by a showing that the control or power to control does not in fact exist." Gov't Br. at 15 (citing AR 2711). The SBA Area Office also considered specific evidence of MDW's independence, *e.g.*, MDW's attempt to obtain contracts with companies other than ECS and status as a new business by industry standards. Gov't Br. at 16 (citing AR 2714). The SBA Area Office, however, found that the evidence and arguments presented by Vet Tech failed to rebut the presumption of economic dependence. Gov't Br. at 15–17.

On appeal, the SBA OHA did not require MDW's circumstances to "mirror exactly the facts of previous SBA OHA cases" to rebut the presumption of dependence. Gov't Br. at 21 (quoting Pl. Br. at 11). Instead, the SBA OHA distinguished Vet Tech's case from prior agency decisions: "[t]his is not the equivalent to finding that the case being reviewed must exactly mirror precedent[.]" Gov't Br. at 21. In addition, the SBA OHA did not "categorically fail[] to consider relevant evidence[.]" Gov't Br. at 25 (quoting Pl. Br. at 13). Instead, the SBA OHA reviewed the totality of the SBA Area Office's finding and determined that it did not contain any clear errors of fact or law. Gov't Br. at 26. Moreover, much of the evidence that Vet Tech proffered to demonstrate economic independence arose after the date of self-certification and therefore was not relevant. Gov't Mot. at 28, 30.

Finally, the Government adds that since the SBA OHA did not address whether MDW is affiliated with ECS under the "newly organized concern" rule, that issue "has not been fully developed for judicial review." Gov't Br. at 36.

### 4.    Veterans Technology, LLC's March 3, 2017 Reply In Support Of Motion For Judgment On The Administrative Record And Response To Defendant's Cross-Motion To Dismiss.

Vet Tech replies that the Preamble to 13 C.F.R. 121.103(f)(2) states that the 70% threshold "is not a bright line rule, but a rebuttable presumption [of economic dependence]," recognizes that "[o]ften new firms will not have as many partners and clients, and therefore will normally be generating more of their revenue from a much smaller number of companies," and cautions the

agency that the 70% presumption should not be applied to "negatively impact start-ups or any other company that operates in a unique industry." Pl. Reply at 4, 8–9 (citing 81 FED. REG. at 34252 (May 31, 2016)).

Not only did the SBA OHA ignore this interpretive guidance in how to apply 13 C.F.R. 121.103(f), it also did not consider evidence proffered by Vet Tech to demonstrate that MDW operates in the defense industry where it takes years for a new business to become established. Pl. Reply at 8–9 (citing 81 FED. REG. 34252 (May 31, 2016)). Instead, the SBA OHA determined that MDW was not a start-up, based solely on the SBA Area Office's finding that MDW was in business for approximately four years, *i.e.*, longer than the company in *Argus & Black, Inc.*, SBA No. SIZ-5204, 2011 WL 1168302 (Feb. 22, 2011), and MDW did not recently emerge from a dormant period, like the company in *Cherokee Nation Healthcare Services*, SBA No. SIZ-5343, 2012 WL 3000376 (Apr. 16, 2012). Pl. Reply at 8–9.

Although economic dependence can raise concerns about control, that fact alone does not establish that control exists. Pl. Reply at 6. In fact, "[d]ependence on large customers is positively correlated with being a small business in certain sectors." Pl. Reply at 6 (citing NFIB Research Found., *Marketing Perspectives*, 6 NFIB Nat'l Small Bus. Poll, no. 8, 2006 at 2). Therefore, "[t]o equate such customer dependence with a lack of independent ownership and operation in an [ir]rebuttable or even largely irrebuttable way, risks treating small, independent companies as if they were large businesses precisely because they are . . . small." Pl. Reply at 7.

In addition, the SBA OHA did not engage in any "reasoned fact finding to which this [c]ourt must defer[.]" Pl. Reply at 9. As the United States Court of Appeals for the Federal Circuit has held, "[r]easoned findings are critical to the performance of agency functions and judicial reliance on agency competence. . . . [But] [c]onclusory statements . . . do not fulfill the agency's obligation." *In re Sang-Su Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002)). In this case, the SBA OHA failed to analyze in any detail the evidence that MDW could function as a freestanding small business, without any revenue from ECS. Pl. Reply at 10. Nor did the SBA OHA properly consider evidence that MDW was considered a new business in the defense contracting industry. Pl. Reply at 11.

Finally, the court should reverse the SBA Area Office's determination that MDW was affiliated with ECS under the "newly organized concern" rule as the Government fails to cite any precedential authority that (1) additional fact finding is necessary; or (2) the legal questions are not ripe for review. Pl. Reply at 14.

### 5.     The Government's March 17, 2017 Reply In Support Of The February 9, 2017 Cross-Motion To Dismiss And Judgment On The Administrative Record.

The Government replies that the SBA OHA performed a case-specific analysis and determined that MDW failed to rebut the presumption of economic dependence, because it: (1) derived 100% of its revenues from ECS during 2012, 90% of its revenues in 2013 and 2014, and over 70% of its revenues in 2015; (2) was not a start-up; and (3) had contracts with ECS that spanned several years and were worth millions of dollars. Gov't Reply at 8–10. In addition, the SBA OHA's application of the presumption of economic dependence did not conflict with the Small Business Act or SBA regulations, simply because it did not consider whether MDW

operated in a unique industry that "requires much longer lead time for start-ups to become truly independent." Gov't Reply at 12 (citing Pl. Reply at 11). Instead, the SBA Area Office found, and the SBA OHA agreed, that the lead times in MDW's industry were not sufficient to rebut the presumption of economic dependence. Gov't Reply at 13.

Nevertheless, if the court overturns the SBA OHA's July 20, 2016 decision, the appropriate remedy is to remand this case to the SBA "to reconsider its prior decision and issue a new decision;" consideration of the "newly organized concern rule," however, is premature. Gov't Reply at 17.

### 6.    The Court's Resolution.

The Small Business Act defines a "small business" as "one which is independently owned and operated and is not dominant in its field of operation." 15 U.S.C. § 632(a)(1). In addition, "Congress . . . gave SBA authority to 'specify detailed definitions or standards by which a business concern may be determined to be a small business concern." *Palladian Partners, Inc.*, 783 F.3d 1247 (citing 15 U.S.C. § 632(a)(2)(A)); *see also* 15 U.S.C. § 637(b)(6) (Empowering SBA "to determine *within any industry* the concerns, firms, persons, corporations, partnerships, cooperatives, or other business enterprises which are to be designated small-business concerns for the purpose of effectuating the provisions of this chapter") (emphasis added).

Therefore, although the SBA has authority to "specify detailed definitions or standards by which a business may be determined to be a small business concern," such definitions and standards are to take into account the relevant "industry." 15 U.S.C. § 637(b)(6).

On January 5, 1956, the SBA issued a Notice of Proposed Rulemaking "to establish the definition of small business." 21 FED. REG. 79 (Jan. 5, 1956). Therein, "industry" was not defined, but "field of operation" was as: "sufficient in its scope to include both those enterprises which are engaged in making or marketing or are ready and able to make or market a product or similar product which is of a like nature." *Id.* at 80. When the first regulations were issued on January 1, 1957, however, neither the definition of "industry" nor "field of operation" were included. Instead, the SBA took a different tact and defined "a small business for the purposes of Government procurement" as a "concern that (1) is *not dominant in its field of operation* and, with its *affiliates*, employs fewer than 500 employees, or (2) is certified by as a small business concern by [the] SBA." *See* 21 FED. REG. 9709, 9710 (Dec. 7, 1956) (citing 13 C.F.R. §103.3) (emphasis added).

In 1956, "affiliate" was defined as a "business concern . . . when either directly or indirectly (1) one firm controls or has the power to control the other, or (2) a third party controls or has the power to control both. In determining whether control or the power to control exists, consideration shall be given to all appropriate factors including common ownership, common management and contractual relationships." 21 FED. REG. 9709, 9710 (Dec. 7, 1956) (citing 13 C.F.R. § 103.2(e)). Over the last sixty-one years, however, the definition of "affiliate" has been significantly expanded, so that original one paragraph description now comprises of forty-two paragraphs or subparagraphs in the Code of Federal Regulations. *See* 13 C.F.R. § 121.103(a)–(d).

The relevant SBA rule in this case, as of May 2, 2016, the date Vet Tech submitted an offer to Missile Defense in response to Solicitation No. HQ 0147-15-R-0019, defines affiliation as:

"Individuals or firms that have identical or substantially identical business or *economic interests* (such as . . . firms that are *economically dependent through contractual* or other *relationships*) *may* be treated as one party with such interest aggregated." 13 C.F.R. § 121.103(f) (emphasis added).

The point of determining whether the members of a joint venture are economically dependent on another business concern, however, is to prevent a business that is "dominant in a field of operation" from being able to obtain a preference under the Small Business Act. *See* 15 U.S.C. § 632(a)(1). But, without defining the "industry" or "field of operation," *i.e.*, the relevant geographic and product market, dominance cannot be ascertained. *See, e.g.*, *Fed. Trade Comm'n and U.S. Dep't of Justice Horizontal Merger Guidelines* (Aug. 19, 2010) at 7–15. In this case, simply stating that MDW is in the field of the "Department of Defense Advisory and Assistance Service Industry" (AR 2594, MDW's definition) or the field of "strategic planning and finance management," "cost estimating and analysis," "earned value management," "accounting," and "informational support and integration" (AR 2598, 2623, SBA Area Office's definition) provides no parameters for a fact finder to ascertain any reliable information relevant to whether a business concern actually is "dominant in the field of operation." AR 2623. A more robust economic analysis is required. *Id.*

The SBA's "affiliation rule" also categorically decrees that: "individuals or firms that have identical or substantially identical businesses," regardless of any other distinguishing features, *ipso facto* "may be treated as one party[.]" 13 C.F.R. § 121.103(f) (emphasis added.) To be sure, federal courts are obligated to afford an agency's rule deference, but deference is not required when the rule, as here, affords an agency absolute discretion, without any apparent substantive constraints. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414–15 (1971) (holding that a federal agency's decision is entitled to a presumption of regularity, but "that presumption is not to shield [the agency's] action from a thorough, probing, in-depth review").

The United States Court of Appeals for the Federal Circuit has held that the United States Court of Federal Claims has jurisdiction to adjudicate alleged violations of statute or regulation "*in connection with any stage of the federal contracting acquisition process*." *Distributed Sols.*, 539 F.3d at 1346 (emphasis added). Whether the court has jurisdiction to adjudicate whether the SBA's "affiliate rule" violates the APA in the context of a bid protest, has not been considered by the United States Court of Federal Claims or our appellate court. The court, however, does not need to reach that issue today, because the SBA Area Office's May 2, 2016 findings were superficial, confusing, and likely incorrect, *i.e.*, arbitrary and capricious. *See generally* Ralph C. Nash and John Cibinic, "Small Business Programs: Controlled Chaos?" 19 No. 1 NASH & CIBINIC REPORT ¶ 3 (Jan. 2005) (commenting on "the chaotic rules that . . . implement the small business initiatives of the Government").

SBA's "General Principles of Affiliation" provide that:

> Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

13 C.F.R. § 121.103(a)(1).

Under this principle, however, only DAI has the power to control Vet Tech by virtue of ownership of 51% of Vet Tech's stock. *See* 13 C.F.R. § 103(c)(1). MDW does not since it is a minority shareholder. But, the SBA also considers, not only stock ownership and management, but "previous relationships with or ties to another concern,[10] and contractual relationships, in determining whether affiliations exists." 13 C.F.R. § 121.103(a)(2) (emphasis added). The "contractual relationships" phrase provides at least some context to the scope of the "affiliation," but in attempting to be more specific, reverts to generalities. *See* 13 C.F.R. § 121.103(f) (describing affiliation based on "identical or substantially identical business or economic interests"). Of course, most firms have "substantially identical business or economic interests," in that they are in business to make a profit. Therefore, this standard is meaningless. As to whether two (or more) firms have a "substantially identical business or economic interests" through "contractual or other relationships[,]" the SBA Area Office, in the first instance, has discretion to determine whether affiliation exists so that "firms . . . *may* be treated as one party." 13 C.F.R. § 121.103(f) (emphasis added).

In this case, the SBA Area Office's May 2, 2016 findings did not discuss why it decided not to exercise its discretion to find that no "economic dependence" existed between MDW and ECS. As such, the SBA Area Office's May 2, 2016 findings provided no reasonable basis on which the court can review *why* the SBA Area Office's decided not to exercise its decision to find no affiliation. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332–33 (Fed. Cir. 2001) (observing that the reviewing court's function is to determine whether "the contracting agency provided a coherent and reasonable explanation of its exercise of discretion") (internal quotation marks and citations omitted).

Assuming, however, that SBA Area Office explained why it exercised its discretion not to find "economic depend[ence] through contractual relationships," nevertheless the burden of proof rests on the SBA Area Office to establish dependency. *See* 13 C.F.R. § 121.102(b) ("As part of its review of a size standard, the *SBA will investigate* if any concern . . . would be dominant in the industry.") (emphasis added).

---

[10] The "previous relationships with or ties to another concern" clause clearly raises due process concerns. *See Brasslett v. Cota*, 761 F.2d 827, 838 (1st Cir. 1985) ("Regulations must be sufficiently specific to provide fair notice of what they proscribe.")

In this case, the SBA Area Office found that

Missile Defense awarded ECS three task orders.   MDW has served as a subcontractor on all three task orders.   The first Task Order DOB-02-10 was awarded to MDW on August 1, 2012.   The second and third Task Orders DOB-07-12 and DOB-02-13 respectively were awarded to MDW on February 28, 2013.   The subcontractor agreement is between the prime contractor, Paradigm and MDW for the period of 7/20/12–9/7/2015 and signed [on] July 20, 2012.

AR 2628.

The record reflects that Missile Defense awarded *Paradigm*—not ECS—Prime Contract HQ 0147-10-D-0020 and Task Order DOB-02-10.   AR 2533.   On December 31, 2011, ECS acquired Paradigm.   AR 2533.   And, on August 1, 2012, Missile Defense "directed" ECS to enter into a subcontract with MDW under Task Order DOB-02-10.   AR 2533.   Thereafter, ECS was awarded two subcontracts under Task Orders DOB-07-12 and DOB-02-13.   AR 2535.

But, the SBA Area Office's May 2, 2016 decision failed to consider that "ECS did not award subcontracts to MDW. . . to provide revenues or financial assistance[.]" AR 2737.   Instead, ECS awarded the first subcontract to MDW on August 1, 2012, in direct response to intervention by Missile Defense requiring that Mr. Maguire continue work on Task Order DOB-02-10, despite the fact that he was leaving the employ of ECS to form a separate and independent company.   AR 2727–28.   Therefore, it was Missile Defense that established the first contractual relationship or "affiliation" between ECS and MDW.

In addition, the SBA Area Office's May 2, 2016 findings do not reflect whether MDW's subcontract work for ECS on Task Orders DOB-07-12 or DOB-02-13 also was required by Missile Defense.   But,

[u]nder the ID/IQ rules, *once a subcontractor was on a team, that subcontractor could not be on any other teams without approval of the government and the prime*. Since MDW Associates was added to the existing ECS Federal (Paradigm) contract to support Task Order DOB-02-10, MDW Associates became a Team Member by their addition to the ID/IQ contract for Task Order DOB-02-10. Since they were now a subcontractor Team Member, MDW Associates was included in the DOB-07-12 and DOB-02-13 proposals based on their skills and qualifications.

AR 2535 (emphasis added).

Therefore, if Missile Defense required MDW to enter into a subcontracting relationship with ECS, and subsequently approved of such continuing subcontracting work, it would be unjust to disqualify Vet Tech from future government contracting opportunities. *See Argus & Black*, SBA No. SIZ-5204, 2011 WL 1168302 (Feb. 22, 2011), at * 6 (declining to find economic dependence when "a mechanical application of the rule . . . would be an injustice").   The SBA Area Office's May 2, 2016 decision discussed none of these "important [if not dispositive] aspects of the problem." *State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Overton Park*, 401 U.S.

at 416 (holding that the reviewing court must determine whether the agency considered *all* the relevant facts and whether there has been an error of judgment);

Finally, the SBA Area Office's findings did not acknowledge numerous representations made by MDW that it was not dependent on ECS, because MDW had the requisite experience and background independently to perform work on Missile Defense Contract No. HQ0147-16-C-0028; a backlog of other non-ECS pending business; modest revenue needs; no debt; and 51.5% of the revenue previously received from ECS was from subcontracts subject to open competition with other firms. AR 1778–79, 1782–84, 2393, 2413, 2416, 2599. Therefore, the SBA OHA's July 20, 2016 decision, affirming the SBA Area Office's May 2, 2016 findings, was arbitrary and capricious. *See Princeton Vanguard, LLC v. Frito-Lay North America, Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015) ("[S]ubstantial evidence review 'requires an examination of the record as a whole, taking into account both the evidence that justifies and detracts from an agency's opinion.' Our review under that standard 'can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale.'") (citations omitted); *see also Seminole Elec. Coop. v. Fed. Energy Regulatory Comm'n*, No. 15-1450, 2017 WL 2818640, at *3 (D.C. Cir. 2017) ("To satisfy [the Administrative Procedure Act's 'arbitrary and capricious'] standard, [the agency] must 'demonstrate that it has made a reasoned decision based upon substantial evidence in the record, and the path of its reasoning must be clear.'") (citation omitted).[11]

## IV.    CONCLUSION.

For these reasons, Plaintiffs' December 21, 2016 Motion For Judgment On The Administrative Record is granted. The Government's February 9, 2017 Cross-Motion To Dismiss is granted, insofar as MDW does not have standing in this case. The Government' February 9, 2017 Motion For Judgment On The Administrative Record, is denied.

The SBA OHA's July 20, 2016 decision affirming the May 2, 2016 SBA Area Office findings is reversed, vacated, and remanded for sixty days to the SBA OHA, at 409 3rd Street, S.W., Washington, D.C., 20416, to instruct the SBA's Area Office at 233 Peachtree Street, Suite 1900, Atlanta, Georgia, 30303, to conduct a new size determination specifically to ascertain whether the actions of DOD and/or Missile Defense were the cause of MDW entering into a subcontracting relationship with ECS, as well as to consider evidence proffered by MDW that, at no time, was MDW economically dependent on ECS. *See* RCFC 52.2(a).

Within ten days of the SBA's Area Office reconsideration, the parties will file a Joint Status Report with the court advising whether: (1) the remand affords a satisfactory basis for disposition of the case; or (2) further proceedings are required. *See* RCFC 52.2(b)(1)(D), 52.2(f)(1). This case is stayed during the remand and reconsideration period. *See* RCFC 52.2(b)(1)(C). In the event that Missile Defense decides not continue to defer the award of a contract during remand

---

[11] The SBA OHA's July 20, 2016 decision did not consider whether the "newly organized concern" rule was violated. As such, that ruling is not ripe for the court's review. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985).

and reconsideration, the court should be advised, in a timely manner, so it may consider briefing on whether interim injunctive relief is required.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Chief Judge**